United States District Court
Southern District of Texas
**ENTERED**
November 20, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIAM DEXTER WHITE,<br>TDCJ # 00545599, and<br>GEORGE EDWARD TUSTIN, JR.,<br>TDCJ # 00443411, | §<br>§<br>§<br>§ | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-0826 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs William Dexter White and George Edward Tustin, Jr., two inmates in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceed *pro se* in this civil rights action. The plaintiffs bring claims against four defendants: Bryan Collier, director of TDCJ; C.F. Hazelwood, head of religious programming for TDCJ; Garthe Parker, head of food service for TDCJ; and Devell Jones, head of food service at the Jester III Unit. The defendants have filed a partial motion to dismiss (Dkt. 55), the plaintiffs have responded, and the defendants have replied. The motion is ripe for decision. Having reviewed the pleadings, the motions and briefing, the applicable authorities, and all matters of record, the defendants' motion to dismiss will be **granted in part** and **denied in part** for the reasons explained below. The plaintiffs' multiple motions, most of which seek the rulings issued in this opinion, also are addressed below.

## I. BACKGROUND

The plaintiffs claim that they are orthodox Jewish inmates with disabilities. TDCJ provides a kosher kitchen at the Stringfellow Unit, which serves as TDCJ's Enhanced Jewish Unit (EJU). Orthodox Jewish inmates at the EJU are provided three hot kosher meals per day at no expense to the inmate. The plaintiffs allege that they are not eligible for assignment to the EJU because the unit does not accommodate disabled inmates and, therefore, their disability prevents them from obtaining meals from a kosher kitchen. They also allege that officials have failed to make accommodations for disabled, orthodox Jewish inmates that would allow them to obtain three hot kosher meals per day without cost. When the plaintiffs filed administrative grievances about the issue, TDCJ officials informed them that they had the option to purchase kosher food from the commissary at their expense.

The plaintiffs filed a complaint (Dkt. 1) and each filed a more definite statement (Dkt. 33; Dkt. 34). They claim that their exclusion from the EJU and the defendants' failure to accommodate disabled Jewish inmates violate their rights under the First Amendment, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*. (RLUIPA), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA), and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (RA). The Court stayed litigation deadlines pending decision on the defendants' partial motion to dismiss. *See* Dkt. 60; Dkt. 89.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Regional*

*Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (cleaned up). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The court must take as true the complaint's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012).

**B. Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington*, 563

F.3d at 147 (cleaned up).

The court's review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the court if the documents are sufficiently referenced in the complaint and no party questions their authenticity (citing 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004))). The Court may also rely on judicially noticed facts. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

**C. *Pro Se* Pleadings**

"Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. ANALYSIS

The defendants seek partial dismissal based on exhaustion of administrative remedies. They also move to dismiss Tustin's claim under the First Amendment, the plaintiffs' individual-capacity claims for damages under RLUIPA, and the plaintiffs' claims under the ADA and RA.

### A. Exhaustion of Administrative Remedies

The complaint in this case requests access to a kosher kitchen; three free, kosher, shelf-stable meals per day; and a hot pot and storage locker for the shelf-stable meals.[1] The defendants argue that the plaintiffs failed to fully exhaust their administrative remedies because their grievances did not request the hot pot or locker (Dkt. 55, at 6-8). This argument is relevant to the plaintiffs' claims under the First Amendment, RLUIPA, and the ADA.

Under the Prisoner Litigation Reform Act (PLRA), inmates bringing an action regarding prison conditions under 42 U.S.C. § 1983 or other federal law must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 578 U.S. 632 (2016); *Jones v. Bock*, 549 U.S. 199 (2007). The grievance process must be completed before a federal complaint is filed and "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "Requiring exhaustion allows prison officials an opportunity to resolve disputes

[1] *See* Dkt. 1, at 5 (requesting "three free Kosher shelf stable meals per day" at the TDCJ unit to which the plaintiff is assigned; a "hot pot to heat [the meals] and storage locker to store them"; that the defendants "[e]stablish, maintain and operate a kosher kitchen that is accessible to all disabled plaintiffs"; and compensatory damages).

concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The exhaustion requirement is mandatory and strictly enforced. *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 789-90 (5th Cir. 2012), *as corrected* (Feb. 20, 2013).

The plaintiffs complain that, because of their disabilities, they are excluded from the TDCJ unit with a kosher kitchen. Their administrative grievances on the issue are attached to the complaint and, as the defendants argue, do not mention hot pots or storage lockers. White's grievance (Grievance No. 2023112513) requested at Step 1 that he be provided "3 free kosher meals per day" and mentioned a kosher kitchen for disabled inmates (Dkt. 1-2, at 3-4). Officials denied the request and stated that the Jester 3 Unit, where White was assigned, "offers kosher entrees and other kosher products through the unit commissary for purchase at the inmate's expense" in accordance with the chaplaincy manual (*id*. at 4). White appealed to Step 2, stating that he cannot afford to purchase the meals and arguing that the policy discriminates against him; officials again denied the grievance (*id*. at 5-6). Tustin's grievance (Grievance 2024010484) also complained that, because of his disabilities, he was excluded from a unit with a kosher kitchen where he could eat three kosher meals per day (*id*. at 24-25). As with White, officials denied his grievance and stated he could purchase kosher food at the commissary (*id*. at 25). At Step 2, Tustin complained that the requirement to pay discriminated against disabled inmates, since non-disabled inmates were provided with free kosher meals, and officials again denied his request (*id*. at 26-27).

Each plaintiff's grievance clearly requested three hot kosher meals per day, which TDCJ provides to non-disabled inmates assigned to a unit with a kosher kitchen. At Step 2, each plaintiff explicitly stated that he could not afford to purchase three meals a day from the commissary and, therefore, was effectively denied a kosher diet. Their *pro se* pleadings request meals from a kosher kitchen or, alternatively, shelf-stable meals and the means to heat and store them (Dkt. 1, at 5; *see also, e.g.*, Dkt. 81, at 2-3). Although their administrative grievances did not request the alternate remedy of hot pots or lockers, they fully presented the plaintiffs' request for three kosher meals per day at no expense and gave officials the opportunity to address the request.

In a prior case addressing an inmate's claim for kosher meals, the Fifth Circuit held, "The purpose of exhaustion under the PLRA is to provide notice of the prisoner's grievances and a chance for the prison system to address them." *Moussazadeh*, 703 F.3d at 789. Here, officials had the opportunity to address the plaintiffs' financial concerns but denied the appeals. As in *Moussazadeh*, TDCJ was fully aware of the plaintiffs' requests for three hot kosher meals per day at no expense. Therefore, the grievances achieved the required purpose to provide the defendants with fair notice of their claims. *See id.*; *Atomanczyk v. Texas Dep't of Crim. Just.*, No. CV H-17-0719, 2017 WL 5157249, at *5 (S.D. Tex. Nov. 6, 2017) (addressing exclusion from kosher meals and citing Fifth Circuit authority that "a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit") (cleaned up).

Because the defendants do not show that the plaintiffs failed to exhaust their administrative remedies, their motion to dismiss on exhaustion grounds will be **denied**.

### B. First Amendment

The defendants move to dismiss the plaintiffs' claims under the First Amendment for failure to state a claim upon which relief can be granted. White states repeatedly that he does not bring a First Amendment claim. *See, e.g.*, Dkt. 70, at 12. Tustin, however, asserts a First Amendment claim regarding the defendants' refusal to provide him with three hot kosher meals per day.

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). An inmate's First Amendment right to exercise his religion "is subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul v. Valenzuela*, 684 F.3d 564, 571-72 (5th Cir. 2012) (cleaned up). If a restriction impinging on the inmate's First Amendment rights is "reasonably related to legitimate penological interests," it must be upheld. *Id.* (cleaned up). An inmate bears the burden to prove "that a prison policy, as applied, is not reasonably related to legitimate penological objectives." *DeMarco v. Bynum*, 50 F.4th 479, 482 (5th Cir. 2022) (cleaned up). Prison officials "are entitled to substantial deference in the exercise of their professional judgment." *Id.* (cleaned up). Courts review prison regulations that impinge on constitutional rights using four *Turner* factors, *see Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the regulation is reasonably related to legitimate penological interests:

> (1) whether there is a "valid, rational connection" between the regulation and the government interest; (2) whether there are alternative means of exercising the rights that remain open to prisoners; (3) the impact that accommodation of the asserted constitutional rights would have on other prisoners, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate a prisoner's rights at de minimis cost to valid penological interests.

*DeMarco*, 50 F.4th at 482.

In *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit considered an inmate's constitutional challenge to prison officials' denial of his request for a kosher diet. The appellate court held that a prison is not required under the First Amendment to accommodate the inmate's request. *Id*. at 122 ("[i]n *Kahey*, we held that the prison was not required to accommodate a Muslim inmate's request for a kosher diet, with particularized requirements regarding the content and preparation of food"); *see Omran v. Prator*, 674 F. App'x 353, 355 (5th Cir. 2016). Under this binding authority, Tustin's First Amendment claim will be **dismissed**.

### C. RLUIPA

The plaintiffs bring claims under RLUIPA. RLUIPA provides that a prison may not "impose a substantial burden on the religious exercise" of an inmate unless the government demonstrates that the imposed burden on that person (1) is "in furtherance of a compelling governmental interest" and (2) is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); *see McFaul*, 684 F.3d at 575. RLUIPA only authorizes official-capacity claims. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); *see Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 605 & n.7 (5th Cir.

2008). Moreover, sovereign immunity bars RLUIPA claims against the defendants in their official capacities for monetary damages. *Sossaman*, 560 F.3d at 331.

Each plaintiff states that he only seeks injunctive relief in the defendants' official capacities (Dkt. 61, at 4; Dkt. 71, at 3-4). Based on these statements and the controlling case law, any claim under RLUIPA for damages or brought in a defendant's individual capacity will be **dismissed**. The plaintiffs may pursue RLUIPA claims against the defendants in their official capacities and may seek declaratory or injunctive relief.

### D. <u>ADA and RA</u>

Title 2 of the ADA prevents discrimination by a public entity based on a disability. 42 U.S.C. §§ 12132-12133; *United States v. Georgia*, 546 U.S. 151, 154 (2006) (the ADA defines "public entity" to include any department or agency of a state, including state prisons); *Carter as next of friend of Carter v. City of Shreveport*, 144 F.4th 809, 813 (5th Cir. 2025). Section 504 of the RA, 29 U.S.C. § 794, also prevents disability discrimination, and courts "equate liability standards under § 504 of the Rehabilitation Act and the ADA." *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (cleaned up). However, the RA has more stringent standards because, unlike the ADA, it requires that the discrimination be solely by reason of the plaintiff's disability. *Id.*; *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 416-17 & n.38 (5th Cir. 2021). Liability under the RA is limited to programs that receive federal financial assistance. 29 U.S.C. § 794; *Prim v. Stein*, 6 F.4th 584, 594-95 (5th Cir. 2021).

**1. Individual Capacity Claims**

The defendants move to dismiss any claims under the ADA or RA brought against them in their individual capacities. White expressed his non-opposition (Dkt. 70, at 7).

Individual defendants are not liable under the ADA. *See Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (individual defendants are not personally liable for discrimination under Title II of the ADA); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 838 (S.D. Tex. 2008) (ADA does not permit suit for monetary damages or injunctive relief against individual defendants in their personal capacities) (citing*, inter alia*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999)). The RA also does not provide for individual liability. *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *see Garcia*, 280 F.3d at 107. Therefore, any ADA or RA claims against the defendants in their individual capacities will be **dismissed**.

**2. Sovereign Immunity**

The defendants move to dismiss the plaintiffs' claims under the ADA and RA based on sovereign immunity and argue that the plaintiffs fail to sufficiently allege a violation of either statute (Dkt. 55, at 5) (citing, *inter alia*, *Georgia.*, 546 U.S. at 159); *see* Dkt. 55, at 10-12 (arguing that the plaintiffs do not allege that, but for their disability, they would receive the benefits they seek).

A plaintiff bringing a discrimination claim under ADA must show that he has a qualifying disability; that he is being excluded from or denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise

discriminated against by the public entity; and that such discrimination is by reason of his disability. *Paley*, 81 F.4th at 449. The third prong may be satisfied by a plaintiff's showing that the public entity failed to make a "reasonable accommodation." *Carter*, 144 F.4th at 814; *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021). To succeed on a failure-to-accommodate claim, a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). To recover damages on an accommodation claim, a plaintiff must show intentional discrimination, which requires "at least actual knowledge that an accommodation is necessary." *Paley*, 81 F.4th at 450 (cleaned up).

The complaint and more definite statements allege that each plaintiff qualifies for placement in TDCJ's EJU but cannot be assigned to the unit because of his disability. The plaintiffs further allege that, at the EJU, they would receive three hot, kosher meals per day at no expense. Because of their disabilities, however, they are assigned to a unit without a kosher kitchen. The plaintiffs informed officials of their complaints through the grievance system, and TDCJ officials informed them that they can purchase kosher food from the commissary. *See* Dkt. 1-2, at 3-6, 24-27. The plaintiffs thus adequately pleaded that officials had knowledge of their exclusion from the program and chose not to provide their requested remedy. They have alleged the existence of a program at the EJU that provides free kosher meals to Jewish inmates and that they are excluded from the program. At the pleading stage of the case, the plaintiffs' detailed allegations, including their presentation of relevant administrative grievances, suffice to plead the required elements of their claim.

### E. Other Pending Motions

The plaintiffs have filed multiple motions for ruling on pending motions and to lift the stay on litigation deadlines. *See* Dkt. 84; Dkt. 86; Dkt. 87; Dkt. 91; Dkt. 92; Dkt. 94. Based on the rulings in this order, these motions will be **granted in part** insofar as the relief they seek is granted above and otherwise **denied** as moot.

White's supplemental motion to establish that discrimination was intentional (Dkt. 83) will be **denied** as premature. White may present this argument at the summary-judgment stage of this case.

White's motion to present clear and unambiguous evidence of fraud (Dkt. 88) appears to refer to issues addressed in a prior order. *See* Dkt. 68. Because White's filing does not clearly demonstrate misconduct by the defendants, the Court in its discretion will **deny** the motion.

## IV. CONCLUSION

For the reasons stated above the Court now **ORDERS** as follows:

1. The defendants' motion to dismiss (Dkt. 55) is **GRANTED in part** and **DENIED in part**. In particular:

   a. The defendants' motion to dismiss based on failure to exhaust administrative remedies is **DENIED**.

   b. The defendants' motion to dismiss Tustin's claim under the First Amendment for failure to state a claim on which relief can be granted is **GRANTED**.

c. The defendants' motion to dismiss the plaintiffs' RLUIPA claims for monetary damages against the defendants in their individual capacities is **GRANTED**. The plaintiffs may proceed with their RLIUPA claims against the defendants in their official capacities and may seek declaratory or injunctive relief.

d. The defendants' motion to dismiss the plaintiffs' ADA or RA claims against the defendants in their individual capacities is **GRANTED**. In all other respects, the motion to dismiss the plaintiffs' claims under the ADA and RA is **DENIED**.

2. The remaining claims in this lawsuit are (a) RLUIPA claims against the defendants in their official capacities for declaratory or injunctive relief; and (b) ADA and RA claims against the defendants in their official capacities.

3 The stay on litigation deadlines, *see* Dkt. 60, Dkt. 89, is now **LIFTED**. Within **thirty (30) days** of the date of this order, the parties must disclose to each other all information relevant to the claims or defense of any party and must follow all other instructions in the order to answer dated March 17, 2026. The defendants must file a motion for summary judgment **within forty-five (45) days** of the date of this order. The plaintiffs' responses will be due **thirty (30) days** after the motion is filed.

4. The plaintiffs' motions for ruling on pending motions and to lift the stay on litigation deadlines (Dkt. 84; Dkt. 86; Dkt. 87; Dkt. 91; Dkt. 92; Dkt. 94) are **GRANTED in part** as stated above and otherwise **DENIED**.

5. White's supplemental motion to establish that discrimination was intentional (Dkt. 83) is **DENIED** as premature.

6. White's motion to present clear and unambiguous evidence of fraud (Dkt. 88) is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on November 20, 2026.

George C. Hanks Jr.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE